IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT PADUCAH, KENTUCKY

| | |
|---|---|
| In the Matter of the Complaint of Foss Maritime )<br>Company, as owner, and Foss Atlantic, Inc., as )<br>operator and owner *pro hac vice*, of the  )<br>M/V DELTA MARINER, Official No. 1094576, )<br>for Exoneration from or Limitation of Liability )  | Case No. 5:12-CV-00021<br>*Electronically Filed* |

**CLAIM AND ANSWER OF THE COMMONWEALTH
OF KENTUCKY TRANSPORTATION CABINET**

<u>**CLAIM OF THE COMMONWEALTH OF
KENTUCKY TRANSPORTATION CABINET**</u>

Claimant Commonwealth of Kentucky Transportation Cabinet (herein "KYTC"), by counsel, pursuant to Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims and in compliance with the Notice to Claimants of Complaint for Exoneration From or Limitation of Liability (DN 6), submits the following claim:

1. KYTC is a department or agency of the Commonwealth of Kentucky in which is vested the function of constructing, maintaining, and operating highways and bridges owned by the Commonwealth for public benefit.

2. On January 26, 2012, Foss Maritime Company and/or Foss Atlantic, Inc. (collectively herein "Foss") were the owner(s) and operator(s) of the M/V Delta Mariner, Official No. 1094576, an 8,000 horsepower motor vessel designed and constructed to operate on the ocean and inland rivers.

3. On said date, the M/V Delta Mariner was being operated within the Commonwealth of Kentucky downstream on the Tennessee River, while on a voyage that

originated in or near Decatur, Alabama on January 25, 2012, and was destined to end at Cape Canaveral, Florida.  The voyage was interrupted on January 26, 2012, when the M/V Delta Mariner allided with the Eggners Ferry Bridge located at mile marker 41.7 on the Tennessee River, causing one span of the bridge to collapse onto the bow of the vessel and into the Tennessee River (herein the "Incident").

   4. At all relevant times, the operation of the M/V Delta Mariner was under the command and control of its 16-person crew, plus a pilot advisor hired by Foss to advise the crew about navigating on the inland rivers.  At all relevant times, the M/V Delta Mariner was equipped with state of the art radio equipment, radar, electronic charts, navigation software, paper charts, and an air draft calculation spreadsheet containing clearance data for overhead obstructions.

   5. At the time of the Incident, Foss, its agents, employees and/or contractors did not listen to and failed to heed the following Broadcast Notice to Mariners:  "Tennessee River on the Eggners Ferry Bridge MI 41.7 TNR (LLNR 32630) all navigation lts are reported ext[inguished].  All mariners are requested to transit this area with caution."  The United States Coast Guard had broadcast this notice twice daily since an outage on the Eggners Ferry Bridge was reported on January 21, 2012.  Efforts to repair the lights by KYTC personnel had begun on January 24, 2012, but had to be suspended due to rain, which created a hazardous situation for KYTC's work crews.  Repairs were scheduled to resume on January 27, 2012, as weather conditions allowed.

   6. As the M/V Delta Mariner approached the Eggners Ferry Bridge, Foss, by its agents, employees and/or contractors, and at a distance of approximately four miles, observed that some lights on the bridge were extinguished and only one of four spans was lighted.  Despite observing this irregular lighting condition, available state of the art equipment was not used to

fix the position of the vessel and determine a proper and safe course to transit the Eggners Ferry Bridge. In addition, Foss, its agents, employees and/or contractors failed to contact the U.S. Coast Guard or other vessels in the vicinity to obtain additional information about the lighting conditions and set a course to safely transit the Eggners Ferry Bridge.

7. As the M/V Delta Mariner approached the Eggners Ferry Bridge, Foss, by its agents, employees and/or contractors intentionally steered the vessel away from the navigation channel and the sailing line shown on U.S. Army Corps of Engineers river charts, which were available in the pilothouse in electronic and print format. The M/V Delta Mariner was steered toward a span of the Eggners Ferry Bridge other than the Channel Span. The span chosen for transit was not marked for transit by commercial vessels such as the M/V Delta Mariner and there was no vertical clearance information available on any of the electronic or printed materials in the pilothouse. Further, there were no vertical clearance markings on either of the piers supporting the span chosen for transit.

8. As the M/V Delta Mariner approached the Eggners Ferry Bridge, the captain on the M/V Addi Belle, which was tied off on mooring cells nearby, called the M/V Delta Mariner via radio to alert the M/V Delta Mariner that its course was not a safe course and that it was possibly too tall to safely transit the span to which the M/V Delta Mariner was headed. The M/V Delta Mariner failed to heed this warning and proceeded along its chosen course with no reduction in speed. The M/V Delta Mariner was too tall to clear the span chosen for transit and allided with the bridge span without slowing its speed from 11.5 miles per hour.

9. As a result of the Incident, one entire span of the Eggners Ferry Bridge was totally destroyed and collapsed onto the bow of the M/V Delta Mariner and into the Tennessee River.

10. As a result of the Incident, KYTC immediately closed the Eggners Ferry Bridge and it remained closed until May 25, 2012. KYTC incurred substantial costs and expenses of at least Seven Million Dollars ($7,000,000.00) to replace the demolished span of the Eggners Ferry Bridge. In addition, KYTC has incurred additional compensable damages in the amount of at least $186,896.63.

11. At all relevant times, Foss had a non-delegable duty to have and keep the M/V Delta Mariner in a seaworthy condition and reasonably fit for its voyage, employ personnel competent to navigate the M/V Delta Mariner on the Tennessee River, equip the M/V Delta Mariner with radar, global positioning system(s), printed and electronic navigation charts, and other navigational aids, and use said equipment to avoid the Incident.

12. At all relevant times, Foss had a duty to operate and equip the M/V Delta Mariner in a reasonable, prudent manner under the prevailing circumstances.

13. Foss, its agents, employees and/or contractors hired by Foss collectively engaged in the navigation and operation of the M/V Delta Mariner failed to satisfy its legal duties, including but not limited to one or more of the following particulars:

    a. In negligently and recklessly failing to hire personnel with sufficient experience and background capable of operating the M/V Delta Mariner on the Tennessee River in a reasonable manner to avoid alliding with the Eggners Ferry Bridge;

    b. In negligently and recklessly operating, and permitting the M/V Delta Mariner to be operated in a negligent and unseamanlike fashion such as to allow the vessel to allide with the Eggners Ferry Bridge;

    c. In negligently and recklessly failing to heed a United States Coast Guard local notice to mariners and multiple broadcast notices to mariners that lights were extinguished

4

on the Eggners Ferry Bridge and warning all mariners to transit the Eggners Ferry Bridge with caution;

        d.    In negligently and recklessly failing to hire competent personnel to reasonably and adequately advise the crew of the M/V Delta Mariner in a reasonable manner to avoid alliding with the Eggners Ferry Bridge;

        e.    In negligently and recklessly failing to maintain a proper and adequate lookout by all available means appropriate under prevailing circumstances and conditions to avoid alliding with the Eggners Ferry Bridge;

        f.    In negligently and recklessly failing to have the M/V Delta Mariner proceed at a safe speed as to allow proper and effective action to avoid alliding with the Eggners Ferry Bridge and be stopped within a distance appropriate to the prevailing circumstances and conditions;

        g.    In negligently and recklessly failing to take reasonable steps to insure that the M/V Delta Mariner was operated in a manner to avoid allision with the Eggners Ferry Bridge;

        h.    In negligently and recklessly failing to provide or use, or improperly using, the radar, electronic chart, search lights, binoculars, and any other navigational aids on board the M/V Delta Mariner;

        i.    In negligently and recklessly failing to operate the M/V Delta Mariner and/or failing to reduce the speed of the M/V Delta Mariner and heed U. S. Coast Guard warnings in written and broadcast notices to mariners to transit the Eggners Ferry Bridge area with caution;

    j. In negligently and recklessly failing to verify and fix the position of the M/V Delta Mariner to know whether there was sufficient vertical clearance for the M/V Delta Mariner to safely transit the Eggners Ferry Bridge;

    k. In negligently and recklessly failing to determine which lights were extinguished on the Eggners Ferry Bridge;

    l. In negligently and recklessly failing to have a safe and adequate passage plan;

    m. In negligently and recklessly hiring river pilots without proper background investigation and failing to effectively monitor said river pilots;

    n. In negligently and recklessly failing to have in place a safety management system on board the M/V Delta Mariner to avoid the Incident;

    o. In negligently and recklessly failing to keep the M/V Delta Mariner in the navigation channel and transit the Eggners Ferry Bridge through the channel span for which vertical clearance had been established for the vessel;

    p. In negligently and recklessly failing to use all printed and electronic aids to navigation available in the pilothouse to navigate the M/V Delta Mariner in a manner to safely transit the Eggners Ferry Bridge;

    q. In negligently and recklessly failing to identify and transit the channel span on the Eggners Ferry Bridge;

    r. In negligently and recklessly failing to ensure that the M/V Delta Mariner was being operated according to the applicable rules of the road, including the standards of navigation of prudent seamen; and

s.  In negligently and recklessly failing to have policies and procedures in place to ensure that the pilot, officers, and crew complied with the foregoing duties and in further failing to have a system in place to review the same in order to monitor whether there had been actual compliance with those policies and procedures.

14.  The unseaworthiness of the M/V Delta Mariner and the negligence in its operation at the time of the Incident were within Foss's privity and knowledge.

15.  As a direct and proximate result of the negligence of Foss, its agents, employees and contractors, KYTC has sustained damages, including but not limited to, damages to the Eggners Ferry Bridge, repair costs, and consequential damages.

## ANSWER OF THE COMMONWEALTH OF KENTUCKY TRANSPORTATION CABINET

Pursuant to Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims, KYTC responds to Foss's Complaint for Exoneration From or Limitation of Liability (herein "Complaint") as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted against KYTC, and should be dismissed.

### SECOND DEFENSE

With respect to the specific averments in the Complaint, KYTC responds as follows:

1.  KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 1, and therefore denies same.

2.  KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 2, and therefore denies same.

3. KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 3, and therefore denies same.

4. KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 4, and therefore denies same.

5. KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 5, and therefore denies same.

6. KYTC admits the averments in paragraph 6.

7. KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 7, and therefore denies same.

8. KYTC denies the averments in paragraph 8.

9. KYTC admits the M/V Delta Mariner was traveling on the Tennessee River, but is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 9, and therefore denies same.

10. KYTC admits the averments in paragraph 10.

11. KYTC denies the averments in paragraph 11.

12. KYTC denies the averments in paragraph 12.

13. KYTC admits the averments in paragraph 13.

14. KYTC admits the averments in paragraph 14.

15. KYTC denies the averments in paragraph 15.

16. KYTC denies the averments in paragraph 16.

17. KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 17, and therefore denies same.

18. KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 18, and therefore denies same.

19. KYTC denies the averments in paragraph 19.

20. KYTC denies the averments in paragraph 20.

21. KYTC is without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 21, and therefore denies same.

22. KYTC admits the averments in paragraph 22.

23. KYTC admits the averments in paragraph 23.

24. KYTC denies the averments in paragraph 24.

25. KYTC denies any and all averments in the Complaint not specifically admitted herein.

### THIRD DEFENSE

As an affirmative defense, the Complaint, as to KYTC, is barred by the Eleventh Amendment of the United States Constitution, and the claim for exoneration and/or limitation of Foss's liability must be denied.

### FOURTH DEFENSE

As an affirmative defense, the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.,* is not applicable and provides no relief for Foss as the M/V Delta Mariner was maintained and operated in a willful, wanton and negligent manner, all of which was within Foss's privity and knowledge.

### FIFTH DEFENSE

As an affirmative defense, exoneration and/or limitation of Foss's liability is barred by the negligence and unseaworthiness of Foss, its agents, employees and/or contractors on the M/V

Delta Mariner, those operating the vessel, and those advising the operators in each of the respects stated in paragraph 13 of the KYTC's Claim, all of which is incorporated herein by reference.

## SIXTH DEFENSE

As an affirmative defense, KYTC denies that the Incident was caused by any negligence or fault of KYTC, its employees, or anyone for whom KYTC is responsible. KYTC is entitled to be fully indemnified for any damages for which KYTC may be required to pay to any other party.

## SEVENTH DEFENSE

As affirmative defenses, KYTC pleads the doctrines of comparative fault and/or apportionment, intervening cause, superseding cause, and sole proximate cause. KYTC adopts all of the allegations set forth in its Claim as additional affirmative defenses. KYTC reserves the right to amend its pleadings to assert further affirmative defenses after having the opportunity to engage in discovery.

WHEREFORE, KYTC respectfully requests the following relief:

A.   Judgment denying Foss's request for exoneration;

B.   Judgment denying Foss's request for limitation of liability;

C.   Judgment in favor of KYTC for the full amount of its damages as shown by the proof herein, plus prejudgment interest;

D.   Judgment in favor of KYTC for its reasonable attorneys' fees and its court costs herein expended;

E.   Judgment for any and all further relief to which KYTC may appear to be entitled.

## DECLARATION

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the Claim set forth herein is true and correct to the best of my knowledge, information and belief.

Commonwealth of Kentucky Transportation Cabinet

By: _____

Steve Waddle, State Highway Engineer

Respectfully submitted,

PAUL KEVIN MOORE, GENERAL COUNSEL
WILLIAM H. ADAMS, II, STAFF ATTORNEY
OFFICE OF LEGAL SERVICES
KENTUCKY TRANSPORTATION CABINET
200 MERO STREET
FRANKFORT, KY 40622
(502) 564-7650

AND

McMURRY & LIVINGSTON, PLLC
P.O. BOX 1700
PADUCAH, KY 42002-1700
(270) 443-6511

BY: s/ Stephen E. Smith, Jr._____
    STEPHEN E. SMITH, JR.
    sonny@ml-lawfirm.com

BY: s/ Kerry D. Smith_____
    KERRY D. SMITH
    kerry@ml-lawfirm.com

BY: s/ Paul Kevin Moore_____
    PAUL KEVIN MOORE
    kevin.moore@ky.gov

BY: s/ William H. Adams, II_____
    WILLIAM H. ADAMS, II
    william.adams@ky.gov

ATTORNEYS FOR KYTC

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of December, 2012, I electronically filed this document through the ECF system, which will send a notice of electronic filing to:

Bobby R. Miller, Jr., Esq.
Carl J. Marshall, Esq.
The Miller Law Firm, PLLC
2660 West Park Drive, Suite 2
Paducah, KY 42001
bmiller@millerlaw-firm.com
cmarshall@millerlaw-firm.com
*Attorneys for Limitation Plaintiffs*

I further certify that I mailed the foregoing document and the Notice of Electronic Filing by First Class Mail to the following non-CM/ECF participant:

| | |
|---|---|
| Mrs. Margaret L. Maddox | Mr. Bryan Warner |
| 310 North Eighth Street | 1537 Wiswell Road W. |
| Murray, KY 42071 | Murray, KY 42071 |
| *Claimant, Pro Se* | *Claimant, Pro Se* |

                                           s/ Stephen E. Smith, Jr.
                                           STEPHEN E. SMITH, JR.