**In the Matter of the Complaint of Foss Maritime Company, as owner, and Foss Atlantic, Inc., as operator and owner *pro hac vice*, of the M/V DELTA MARINER, Official No. 1094576, for Exoneration from or Limitation of Liability**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on three motions filed in this limitation of liability action.

- Claimant, Commonwealth of Kentucky Transportation Cabinet ("KYTC"), moves to dismiss the Limitation Plaintiffs' counterclaim for failure to state a claim and lack of subject matter jurisdiction. (DN 39.) The Limitation Plaintiffs have responded, (DN 46), and KYTC has replied. (DN 51.)

- Third Party Defendants, James LeFevre ("LeFevre") and Thomas Hines ("Hines"), move to dismiss the Limitation Plaintiffs' third-party complaint for failure to state a claim and lack of subject matter jurisdiction. (DN 40.) The Limitation Plaintiffs have responded, (DN 45), and the Third Party Defendants have replied. (DN 52.)

- KYTC has also filed a motion to strike excerpts from an unofficial hearing transcript submitted by the Limitation Plaintiffs in their responsive pleadings. (DN 50.) The Limitation Plaintiffs have responded, (DN 55), and KYTC has replied. (DN 56.)

These matters are now ripe for adjudication.

## I.

As developed at this preliminary stage, the underlying facts are as follows. Foss Maritime Company and Foss Atlantic, Inc. (collectively "Foss" or the "Limitation Plaintiffs"), own and operate the vessel *M/V Delta Mariner* ("*Delta Mariner*"). While traveling on the Kentucky Lake portion of the Tennessee River on January 26, 2012, the *Delta Mariner* allided with the Eggners Ferry Bridge[1] at approximately 8:00 p.m. Foss alleges that at the time of the allision, only one span of the Eggners Ferry Bridge was marked with navigational lights and the remainder was dark. After attempting to traverse the lighted span, for which there was insufficient clearance, the *Delta Mariner* struck the span, demolishing the span and allegedly causing significant damage to the vessel itself.

Following the allision, Foss instituted this limitation action seeking exoneration from, or limitation of, liability. Several parties have filed claims related to the allision, including residents who allege losses related to interruption of their usual travel routines, restaurant owners who allege the loss of travel-related business, and a telecommunications company that had a fiber optic cable severed by the accident.[2] Additionally, as the owner of the Eggners Ferry Bridge, KYTC filed a claim for the cost and expense of replacing the demolished span of the bridge, plus damages. (DN 12.)

At the time it answered KYTC's claim, Foss simultaneously filed a counterclaim against KYTC and a third party complaint against Defendants Thomas Hines and James LeFevre. (DN 22.) During the period relevant to the underlying suit, Hines was the supervisor of permits and traffic for District One of the Transportation Cabinet and LeFevre was the Transportation

---

[1] The Eggners Ferry Bridge is a highway bridge that allows road traffic to traverse the lake.
[2] *See* Claim by Margaret Maddox (DN 8); Claim by Bryan Warner (DN 11); Claim by Kevin Cunningham (DN 16); Claim by Bertha and Kelly Wilson (DN 15); Answer to Compl. & Claim for Damages by BellSouth Telecommunications, LLC (DN 14).

Cabinet's Chief District Engineer. (*Id.*) The counterclaim against KYTC alleges that the allision of the *Delta Mariner* with the Eggners Ferry Bridge was proximately caused by the KYTC's negligence. As a result, Foss seeks a set-off against any damages awarded to the KYTC from Foss and contribution or indemnity from the KYTC for any amounts Foss may be determined to owe another claimant or party. (*Id.*) Similarly, Foss's third party complaint against LeFevre and Hines alleges that the acts and omissions of both men proximately caused the *Delta Mariner* to allide with the Eggners Ferry Bridge and seeks to hold them individually liable. (*Id.*) Foss alleges that Hines "was at all material times responsible for the oversight of the repair, maintenance and inspection of the bridge lights on bridges in District One including . . . those bridge lights required by the United States Coast Guard Bridge Permit that governed the Eggners Ferry Bridge." (*Id.*) Foss alleges that Hines's duties were ministerial and non-discretionary. (*Id.*) As to LeFevre, Foss alleges that "he was Mr. Hines'[s] supervisor and also responsible for carrying out the ministerial, non-discretionary obligations contained in [the Bridge Permit]." (*Id.*) Based on these allegations, Foss seeks contribution or indemnity from Hines and LeFevre. (*Id.*)

Currently pending before this Court are two motions to dismiss. First, the KYTC moves to dismiss Foss's counterclaim under both Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of subject matter jurisdiction. Specifically, the KYTC argues that Foss's claims against it are barred by two distinct categories of immunity: state sovereign (or governmental) immunity and Eleventh Amendment immunity. (DN 39-1.) Second, defendants Hines and LeFevre move to dismiss Foss's third-party complaint, also under both Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of subject matter jurisdiction. First, LeFevre and Hines contend Foss's assertion of claims against them in their individual capacity "should be dismissed as an impermissible effort to bypass the Eleventh Amendment because Foss is simply seeking to

accomplish, via artifice, exactly what it would accomplish if it could bring a direct suit against the Commonwealth of Kentucky." (DN 40-1.) Alternatively, LeFevre and Hines argue that, regardless of the application of the Eleventh Amendment, they are immune from suit under state sovereign immunity principles.

## II.

### A.

A motion to dismiss based on a state's immunity under the Eleventh Amendment is essentially a motion to dismiss for "lack of subject-matter jurisdiction." *See Angel v. Kentucky*, 314 F.3d 262, 265 (6th Cir. 2002) ("[S]tate immunity is jurisdictional in the same sense as the complete diversity requirement or the well-pleaded complaint rule. . . . [A] federal court *must* examine each claim in a case to see if the court's jurisdiction is barred by the Eleventh Amendment")(emphasis and second alteration in original); *see also* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Leb.*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.*, 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also*

*Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

**B.**

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Additionally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to

state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

### III.

The Court first addresses KYTC's motion to dismiss. The KYTC submits that it is not subject to suit on two grounds: sovereign immunity under the Eleventh Amendment and state sovereign immunity, also known as governmental immunity. The Court addresses each in turn.

### A.

The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has also "made clear that the sovereign immunity of the states . . . extends to actions brought against a state by its own citizens." *Dixon v. Clem,* 492 F.3d 665, 674 (6th Cir. 2007) (quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). The Sixth Circuit has opined that "[a] state is sovereign within the structure of the federal system, and 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). Moreover, "[s]overeign immunity applies not only to the states themselves, but also to 'state

instrumentalities,'" *S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 419 (6th Cir. 2004) (quoting *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997)), and regardless of the relief sought. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The parties do not dispute that the KYTC is an arm of the state. *See* Ky. Rev. Stat. § 12.250 (establishing the KYTC within Kentucky's government; *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995) (holding that Eleventh Amendment barred claims against the Transportation Cabinet).

There are essentially three exceptions to the rule cited above: (1) when the state consents to suit; (2) when Congress has abrogated a state's sovereign immunity; and (3) when under the fiction created by *Ex parte Young*, 209 U.S. 123 (1908), a litigant seeks injunctive or prospective relief from a state officer in order to prevent future constitutional violations. *See Barton*, 293 F.3d at 948; *Puerto Rico Aqueduct and Sewer Auth.*, 506 U.S. at 146 (advising that *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought"). Foss contends that the first of these exceptions applies. Specifically, Foss argues that, by asserting a claim for damages in this limitation proceeding, the KYTC affirmatively waived its immunity under the Eleventh Amendment.

The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675 (1999)). Thus, a "State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). "Only by requiring this 'clear declaration' by the State can we be 'certain that the State in fact consents to suit.'" *Id.* (quoting *Coll. Sav. Bank*, 527 U.S. at 680). For these reasons, "a waiver of sovereign

immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Id.* (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)).

This proceeding involves a limitation of liability action filed under the Limitation of Liability Act ("the Act"), and is not a standard tort suit. As a recent decision from the Eastern District of Louisiana explains:

> The Act provides for the enjoining of pending suits against shipowners and their consolidation in a single federal court so that liability may be determined and limited to the value of the shipowner's vessel and freight pending. Because the Act was badly drafted even by the standards of the time, the Supreme Court codified a procedure for its implementation in Rule F of the Admiralty Rules. Rule F provides a single forum for the determination of (1) whether the vessel and its owner are liable at all; (2) whether the owner may in fact limit liability to the value of the vessel and pending freight; (3) the amount of just claims; and (4) how the fund [containing the value of the vessel and freight] should be distributed to the claimants. While a shipowner may only file a petition for limitation in admiralty jurisdiction in federal district court, he or she may plead limitation as a defense to an action seeking damages in federal or state court.
>
> The burden of proof in a limitation proceeding parallels that in a standard suit for damages. Claimants against the shipowner must prove the vessel's negligence or unseaworthiness caused their losses. If they so prove, the burden shifts to the shipowner to prove there was no design, neglect, privity or knowledge on his or her part. If the shipowner is not exonerated, but the court finds he or she is entitled to limitation of liability, payment to claimants is made on a pro-rata basis, generally out of the security deposited with the court.

*In re Manson Const. Co.*, 883 F. Supp. 2d 659, 665 (E.D. La. 2012) (citations and internal quotation marks omitted) (quoting 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 15-1 to -7 (2d ed. 1994)).

As both parties note, limitation proceedings are not "suits against the state" barred by the Eleventh Amendment. *See Magnolia Marine Transp. Co. v. Oklahoma*, 366 F.3d 1153, 1158 (10th Cir. 2004); *Bouchard Transp. Co., Inc. v. Updegraff*, 147 F.3d 1344, 1349 (11th Cir. 1998); *Manson Const.*, 883 F. Supp. 2d at 665-666; *In re Sand Bar I, Inc.*, 1992 WL 84277 (E.D. La. 1992). In *Magnolia Marine*, the Tenth Circuit analogized a bankruptcy action with a

[8]

limitation proceeding in holding that the latter did not violate the Eleventh Amendment. 366 F.3d at 1160. Particularly, the Court noted the non-adversary nature of both types of suit:

> As the Supreme Court noted in the bankruptcy case of *Gardner v. New Jersey,* 329 U.S. 565, 573-74, 67 S.Ct. 467, 91 L.Ed. 504 (1947), "[i]f the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State." The same is true in a limitation proceeding under admiralty law.

*Id.* Similarly, in *Sand Bar I*, the Eastern District of Louisiana also focused on the non-adversarial nature of a limitation proceeding, holding that "[a] limitation of liability action is so thoroughly defensive in nature that it falls wholly outside the scope of 'suit against a state' as used in the Eleventh Amendment." 1992 WL 84277, at *3.

However, deciding that a limitation of liability action is not subject to dismissal based on sovereign immunity does not resolve the question before the Court. The KYTC does not argue the Eleventh Amendment prohibits Foss from seeking limitation of liability. Rather, the KYTC contends that the Eleventh Amendment bars Foss's adversarial *counterclaim* against it. In response, Foss advances two arguments. First, as discussed above, Foss argues that, by asserting a claim for damages in this limitation proceeding, the KYTC waived its Eleventh Amendment immunity. Second, Foss argues that its counterclaim seeks setoff and recoupment, which does not implicate sovereign immunity under the Eleventh Amendment. The Court addresses each argument in turn.

Foss first contends that the KYTC waived any Eleventh Amendment immunity by filing a claim in this limitation action. Perhaps following the Tenth Circuit's lead in *Magnolia Marine*, Foss cites a number of cases in which states were found to have waived their sovereign immunity in the bankruptcy context. Though Foss makes its argument well, the Court disagrees that these cases support a finding that KYTC has waived its sovereign immunity. First, many of the cases

Foss cites were governed by Section 106 of the Bankruptcy Code, which provides for a waiver of sovereign immunity in bankruptcy cases and does not apply to the limitation proceedings at bar. *See*, *e.g.*, *In re Hughes-Bechtol, Inc.*, 124 B.R. 1007, 1017 (Bankr. S.D. Ohio 1991) (analyzing the issue of waiver of sovereign immunity under 11 U.S.C. § 106); *In re Cook United, Inc.*, 117 B.R. 301, 304-06 (Bankr. N.D. Ohio 1990) (same); *Matter of Windrush Associates II*, 105 B.R. 195, 198 (Bankr. D. Conn. 1989) (same). Second, other district courts to consider the issue in the context of a limitation of liability action have held that a state does not waive its sovereign immunity by filing a claim in a limitation of liability action. *In re Manson Const. Co.*, 883 F. Supp. 2d at 669 (rejecting a waiver argument in dismissing a third-party complaint filed against the state in a limitation of liability action); *Sand Bar I*, 1992 WL 84277 at *4. The Court finds that the KYTC has not waived its sovereign immunity by filing a claim in this action.

Next, Foss argues that because it includes a claim that it is entitled to a set-off of any damages awarded to the KYTC, its counterclaim does not implicate sovereign immunity. Foss's counterclaim seeks the following relief: (1) a set-off against any damages awarded to the KYTC from Foss; (2) contribution and/or indemnity from KYTC for any damages "in favor of any Claimants or any other party"; (3) "judgment for all relief to which they are entitled and for all sums that may be adjudged against [Foss] in favor of other Claimants, together with all costs and expenses herein, and for all other general and equitable relief." (DN 22.) In other words, Foss's counterclaim seeks damages which, if it is successful, will have to be paid out of the public treasury of the Commonwealth of Kentucky to KYTC's fellow claimants. Foss's counterclaim seeking indemnity is clearly a claim against the state for monetary relief. *In re Manson Const. Co.*, 883 F. Supp. 2d at 666-67. Thus, KYTC is protected from such a claim by the Eleventh

Amendment. Having found that the KYTC has not waived its immunity by filing a claim in this action, the Court grants its motion to dismiss Foss's counterclaim.[3]

**B.**

Although the KYTC's immunity under the Eleventh Amendment bars Foss's counterclaim, the KYTC also would be immune from suit under state sovereign immunity, or governmental immunity principles. Whether the KYTC is entitled to governmental immunity hinges on whether it was performing a governmental function or a proprietary function in operating the Eggners Ferry Bridge. "The test for making this determination is as follows: Is the Board carrying out a function integral to state government, or is it engaged in a business of a sort theretofore engaged in by private persons or corporations for profit?" *Brabson v. Floyd Cnty. Bd. of Educ.*, 796 F. Supp. 2d 862, 864 (E.D. Ky. 2011) (citations omitted) (quoting *Ky. Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 332 (Ky. 1990) *and Yanero v. Davis*, 65 S.W.3d 510, 520 (Ky. 2001)) (internal quotation marks omitted). For example in *Berns*, the Kentucky Supreme Court held that the Kentucky Center for the Arts was not entitled to sovereign immunity because, although created by the state, it was not "carrying out a function integral to state government" and instead performed "substantially the same functions as any private business engaged in the entertainment business." *Ky. Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 331 (Ky. 1990).

Foss argues that the KYTC's operation of a bridge is a proprietary activity, attaching in support an affidavit from civil engineer, Mark Lessens, who indicates that there are thousands of privately owned highway bridges in "41 states and Puerto Rico." (DN 46-1.) The Court disagrees, as Kentucky courts have expressly held otherwise. *Longworth v. Bird*, 2007 WL

---

[3] Dismissal of Foss's counterclaim does not preclude Foss from asserting an affirmative defense arguing that any recovery by the KYTC from Foss should be reduced by its own alleged comparative negligence. However, to the extent Foss's counterclaim seeks payment by the state for any judgment against it by third parties, such is barred by the Eleventh Amendment.

2892011, at *4 (Ky. Ct. App. Oct. 5, 2007) ("[T]he county is protected from suit by sovereign immunity because the maintenance and construction of roads and bridges are clearly governmental functions and not proprietary ones.")

> The construction and maintenance of highways and bridges as a governmental function is one of the most ancient known to the law . . . Bridges are an integral part of highways and roads, and, when it is once determined that the construction and maintenance of highways and streets is a governmental function, the construction and maintenance of bridges, a fortiori, is a like function.

*Boomer v. Glenn*, 21 F. Supp. 766, 767 (W.D. Ky. 1938). That certain bridges are privately owned does not change this analysis.[4] Thus, the KYTC's entitlement to governmental immunity would also support dismissal of Foss's counterclaim.

### IV.

Like the KYTC, Hines and LeFevre submit that they are also immune from suit under both the Eleventh Amendment and state sovereign immunity principles.

### A.

Hines and LeFevre first contend that the Court lacks jurisdiction to hear the claims against them because "the Eleventh Amendment creates a jurisdictional bar to suit against states and state employees sued in their official capacities for money damages." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) (discussing the holding of *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Although acknowledging that Foss's third-party complaint asserts claims against them solely in their individual capacities, Hines and LeFevre

---

[4] Foss alternatively requests additional time for discovery on the issue of whether the KYTC was engaged in a governmental or proprietary activity in its operation of the Eggners Ferry Bridge. The Court does not believe additional discovery is necessary on the issue, as dismissal of Foss's counterclaim is also proper on Eleventh Amendment grounds.

argue that Foss sues them in name only in an attempt to impermissibly run around the Eleventh Amendment by elevating form over substance.

The general rule is that such suits against state officials in their individual capacity are not barred by the Eleventh Amendment, because the plaintiff is seeking damages from individuals rather than from the state treasury. *Luder v. Endicott*, 253 F.3d 1020, 1022-23 (7th Cir. 2001). However, in narrow circumstances, "when a plaintiff seeks relief that *only* the state can provide, he or she may not overcome sovereign immunity simply by suing an individual actor." *Sullins v. Rodriguez*, 913 A.2d 415, 426 (Conn. 2007) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)). Hines and LeFevre cite to a Seventh Circuit case, *Luder v. Endicott*, in support of their argument that Foss's third-party complaint is barred by the Eleventh Amendment. *Luder v. Endicott*, 253 F.3d 1020 (7th Cir. 2001). In *Luder,* prison employees sued the warden and deputy warden in their individual capacities for work the employees had been ordered to perform before and after their official shifts. There, the court reasoned that the plaintiffs were really "seeking to accomplish *exactly* what they would accomplish were they allowed to maintain th[e] suit against the state . . . to force the state to accede to their view of the [Fair Labor Standards] Act and to *pay* them accordingly." *Id.* at 1024 (emphasis altered). In other words, the relief sought, namely back pay, was relief that *only* the state could provide.

The present case, which seeks to recover damages for the alleged negligence of Hines and LeFevre, does not implicate the narrow concerns of *Luder*. Nor is the Court persuaded by other authority cited by Hines and LeFevre, most of which is not binding on this Court and nonetheless is distinguishable.[5] The Court sees no reason to find this case does not fall under the general rule allowing individual suits against state employees.

---

[5] Hines and LeFevre cite to a Sixth Circuit case and a case from this district; however, both are distinguishable, as it was unclear in those cases whether the plaintiffs intended to sue the named officials

**B.**

Although the Court holds that the Eleventh Amendment does not bar Foss's third-party complaint against Hines and LeFevre, they may nonetheless be protected by official immunity under Kentucky law "for acts performed in the exercise of their discretionary functions." *Yanero*, 65 S.W.3d at 521. Hines and LeFevre next contend that the factual allegations in the third-party complaint are insufficient to state a claim against them in their individual capacities and, therefore, cannot survive a Rule 12(b)(6) motion to dismiss. In order to address the motion to dismiss, the Court must examine the allegations contained in the third-party complaint.

The third-party complaint alleges that the Eggners Ferry Bridge is owned by the Commonwealth of Kentucky and the KYTC and is operated pursuant to the terms and conditions of a permit issued by the United States Coast Guard. (Counterclaim, DN 22, ¶¶ 10-11 (incorporated by reference into Third-Party Compl., DN 22, ¶ 12.)) The permit requires the bridge's spans and piers to be marked with navigation lights and inspected and maintained in working condition. (*Id.* ¶ 12.)

Hines was employed by the KYTC "as the supervisor of the division of permits and traffic." (Third-Party Compl. ¶ 13.) In that role, he was "responsible for the oversight of the repair, maintenance and inspection of the . . . bridge lights required by the United States Coast Guard permit that governed the Eggners Ferry Bridge." (*Id.* at ¶ 14.) LeFevre was employed by the Kentucky Transportation Cabinet as a "District Engineer," and in that role "he was [Hines's] supervisor and also responsible for carrying out the ministerial, non-discretionary obligations

---

in their individual or official capacities. *Copper S.S. Co. v. Michigan*, 194 F.2d 465 (6th Cir. 1952) (plaintiff sought damages against the State of Michigan, the State Highway Department, and the State Highway Commissioner); *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 582-83 (W.D. Ky. 2012) (noting that the "complaint is *unclear* regarding whether a state official is being sued in his individual or official capacity") (emphasis added). Here, Foss clearly and unequivocally states its intention to sue Hines and LeFevre in their individual capacities. (DN 22.)

[14]

contained in the United States Coast Guard Bridge Permit to properly light the Eggners Ferry Bridge." (*Id.* at ¶ 15.)

Foss alleges that the *Delta Mariner's* allision with the Eggners Ferry Bridge was "proximately caused by the negligence and failure of the third party Limitation Plaintiffs, Mr. Hines and Mr. LeFevre, to perform the following":

   a. Failure to propound rules requiring adequate inspections to keep the bridge lights working as required by the Bridge Permit;

   b. Failure to require adequate inspection of the bridge lights;

   c. Failure to maintain records of inspections of the bridge lights;

   d. Failure to effect repairs of the bridge lights in a timely fashion as required by the Bridge Permit;

   e. Failure to adequately repair the navigation lighting system as required by the Bridge Permit;

   f. Failure to maintain the navigation lighting as required by the Bridge Permit;

   g. Failure to upgrade the navigation lighting system to insure that it would perform as required by the Bridge Permit; [and]

   h. As to Mr. LeFevre, failure to train Mr. Hines and others of the content of the United States Coast Guard bridge permit so that the permit could be complied with[.]

(*Id.* at ¶ 16.) In their motion to dismiss, Hines and LeFevre argue the above-listed actions are clearly discretionary functions, and that "simply calling a function 'ministerial' does not make it so." (DN 40-1.)

In response, Foss directs the Court to *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001). In *Yanero*, the Kentucky Supreme Court held that "when an officer or employee of a state or county (or one of its agencies) is sued in his or her individual capacity, that officer or employee enjoys qualified immunity, 'which affords protection from damages liability for good faith judgment

calls made in a legally uncertain environment.'" *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (quoting *Yanero*, 65 S.W.3d at 522)). State employees acting within the scope of their employment are granted qualified immunity "where the act performed by the official or employee is one that is discretionary in nature. Discretionary acts are . . . 'those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment.'" *Id.* at 240 (quoting *Yanero*, 65 S.W.3d at 522). Discretionary acts are to be distinguished from ministerial functions. "[M]inisterial acts or functions–for which there are no immunity–are those that require 'only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 522). Relying on *Yanero*, Foss claims that the acts listed in the third-party complaint and negligently performed by Hines and LeFevre were *ministerial*, not discretionary, acts. As such, Foss argues that the individual capacity claims may not be dismissed because Hines and LeFevre may be held individually liable for negligently performed ministerial acts that proximately caused the accident.

Having decided Foss's individual claims against Hines and LeFevre are proper under the Eleventh Amendment, the remaining issue before the Court is whether the acts alleged in the third-party complaint were discretionary or ministerial. If discretionary, Hines and LeFevre are entitled to qualified immunity and the individual capacity claims must be dismissed. If ministerial and negligently performed, however, they may be held individually liable. Foss contends that the acts listed in the complaint were ministerial because they were *required* by the bridge permit issued to the state of Kentucky by the United States Coast Guard. In Foss's view, Hines and LeFevre were given no discretion and were required by the bridge permit to carry out those functions. Hines and LeFevre, on the other hand, argue that they are entitled to qualified

[16]

immunity because the listed actions were wholly discretionary and that they were given wide latitude and authority over how and whether those actions were performed.

At this stage, the evidentiary record is insufficient for the Court to determine whether the actions listed in the third-party complaint were ministerial or discretionary. Foss asserts in its pleadings and briefings that Hines and LeFevre negligently performed ministerial acts that proximately caused the *Delta Mariner* to allide with the Eggners Ferry Bridge. Taking these allegations as a true, the Court finds that Foss has stated a claim upon which relief can be granted. Therefore, the third-party complaint contains sufficient allegations to overcome the Rule 12(b)(6) motion to dismiss.

Hines and LeFevre have cited numerous cases to the Court that lend substantial weight to their position that the actions listed in the third-party complaint were discretionary and not ministerial. It appears to the Court that many of the listed actions may ultimately be discretionary functions for which Hines and LeFevre will be entitled to qualified immunity. Without the benefit of discovery on the issue, however, the Court is unable to determine which of those action, if any, were actually discretionary.[6] Discovery will further reveal whether the actions attributed to Hines and LeFevre in the third-party complaint were ministerial or discretionary. For any actions that the Hines and LeFevre believe to be discretionary, they may renew their qualified immunity arguments in a motion for summary judgment after a period of discovery.

---

[6] Although Foss attaches excerpts from an unofficial hearing transcript to its response, the Court finds it inappropriate to consider those materials at the motion to dismiss stage. Because the Court does not consider these excerpts in reaching its decision, KYTC's motion to strike, (DN 50), is denied as moot.

## V.

This matter came before the Court on two motions to dismiss. For all of the foregoing reasons, the KYTC's motion to dismiss Foss's counterclaim, (DN 39), is **GRANTED** but Hines and LeFevre's motion to dismiss Foss's third-party complaint, (DN 40), is DENIED. The KYTC's motion to strike, (DN 50), is also rendered **MOOT** by the Court's decision.

IT IS SO ORDERED.

Date:

CC: Counsel