UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00021


In the Matter of the Complaint of Foss Maritime
Company, as owner, and Foss Atlantic, Inc., as
operator and owner *pro hac vice*, of the M/V
DELTA MARINER, Official No. 1095476, for
Exoneration from or Limitation of Liability


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon the Motion to Alter or Amend Judgment of Limitation

Plaintiffs/Counterclaimants Foss Maritime Company and Foss Atlantic, Inc. (collectively, "Foss"). The

Commonwealth of Kentucky Transportation Cabinet ("KYTC") has responded, (Docket No. 63), and

Foss has replied, (Docket No. 64). Fully briefed, this matter is ripe for adjudication. For the reasons

explained below, Foss's motion will be DENIED.


**Factual and Procedural Background**

Foss initiated this limitation action regarding the January 26, 2012 allision of the vessel *M/V*

*Delta Mariner* ("*Delta Mariner*") with the Eggners Ferry Bridge ("the Bridge,"), located on the Kentucky

Lake portion of the Tennessee River. The *Delta Mariner*, owned and operated by Foss, struck a span of

the bridge, demolishing the span and causing significant damage to the vessel itself. Foss's action seeks

exoneration from, or limitation of, its liability for the allusion. Among the claims related to the accident

is that of the KYTC, which owns the Bridge and seeks reimbursement for the cost of replacing its

demolished span. (Docket No. 12.)

After the KYTC filed its claim, Foss filed an answer incorporating by reference the affirmative

defenses listed in Federal Rule of Civil Procedure 8(c). Foss also asserted a counterclaim against the

Commonwealth, seeking all sums adjudged in favor of other claimants as well as unspecified general and

1

equitable relief.  (Docket No. 22.)  On August 13, 2013, the Court entered a Memorandum Opinion and Order granting the Kentucky Transportation Cabinet's ("KYTC") Motion to Dismiss Foss's counterclaim. (Docket No. 58.)  The Court grounded its dismissal upon principles of Eleventh Amendment and state sovereign immunity.  The Court further noted that Foss could assert an affirmative defense for the reduction of any recovery by the KYTC.  (Docket No. 58 at 3.)  Foss now seeks relief from three provisions of the Court's earlier opinion.

Foss first urges the Court to permit its counterclaim against the KYTC.  Specifically, Foss seeks a credit for the amount it has already paid against any damages the KYTC may recover.  The company next contends that it should be permitted to assert recoupment and setoff as affirmative defenses in its answer. Finally, Foss argues that its counterclaim does not implicate KYTC's governmental immunity.  The Court will address each argument in turn.

**Legal Standard**

The Sixth Circuit and its lower courts have consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 746 (W.D. Ky. 2013) (quoting *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008)). "It is not the function of a motion to reconsider arguments already considered and rejected by the court."  *Id.* (citing *White*, 2008 WL 782565, at *1).  As this Court has recognized on numerous occasions, "Where a party views the law in a light contrary to that of this Court, its proper recourse is not by way of a motion for reconsideration but appeal to the Sixth Circuit." *Id.* (citation omitted).

Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds:  "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of

law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Furthermore, given the fundamental interest in a decision's finality, district courts have held that "such motions are extraordinary and sparingly granted." *Derby City Capital*, 949 F. Supp. 2d at 747 (alteration omitted) (quoting *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007)).

## I.     Comparative negligence

The parties agree that comparative fault applies in admiralty and maritime tort cases. When at least two parties have contributed by their fault to cause property damages, liability is allocated among the parties in proportion to the comparative degree of their fault. *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 832, 836-37 (1996); *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994); *United States v. Reliable Transfer*, 421 U.S. 397 (1975). Moreover, Foss acknowledges the Court's determination that its counterclaim against the KYTC must be dismissed. However, Foss queries how its alleged damages will be apportioned in a comparative negligence analysis, pointing to the Court's observation that Foss could reduce the KYTC's damages based on this doctrine. (Docket No. 58 at 11, n.3 ("Dismissal of Foss's counterclaim does not preclude Foss from asserting an affirmative defense arguing that any recovery by the KYTC should be reduced by its own alleged comparative negligence."))

When the *Delta Mariner* allided with the Bridge, Foss explains, a portion of the Bridge descended into the river and onto the vessel's bow, with some wreckage sinking into Kentucky Lake. The KYTC alleges damages of at least $7 million to replace this portion of the bridge. (Docket No. 13 at ¶ 10.) Foss alleges that its own damages exceed $5 million, pointing to the cost of repairing the vessel, salvaging it from the scene of the accident, and removing debris from the lake. (Docket No. 22 at ¶ 22). It contends that the KYTC is obligated to remit such damages. Foss urges the Court to consider the entire $12 million asserted by the parties in the comparative fault allocation. (Docket No. 60-1 at 6.) Foss

asserts that it has paid $5 million to date, 41.6% of the total $12 million in damages claimed by the parties. However, as Foss observes, if only the KYTC's alleged damages are determinative in the comparative fault analysis, Foss would owe significantly more—a result the company deems "manifestly inequitable." (Docket No. 60-1 at 7.)

The parties carry on their arguments by way of competing footnotes in their briefs. First, the KYTC challenges Foss's assertion that the company has paid 41.6% of the total damages. According to the KYTC, Foss misapprehends that the two parties were *in pari delicto*[1] regarding the debris. The KYTC expects the evidence to establish that the allision itself caused only an insignificant portion of the debris, the majority of which instead resulted from Foss's efforts to repair the *Delta Mariner*. (Docket No. 63-1 at 7, n.4.) Moreover, the KYTC contends that the United States Army Corps of Engineers required Foss alone—not the KYTC—to pay for the debris cleanup. (Docket No. 63-1 at 7, n.4.) Foss errantly characterizes the parties as *in pari delicto*, says the KYTC, despite the fact that they were not concurrently negligent.

Foss counters that no debris would have existed had the KYTC properly maintained the Bridge's lighting, as such upkeep would have prevented the allision altogether. Foss further explains that the Army Corps of Engineers issued demand letters to both Foss and the KYTC regarding cleanup efforts, but that the KYTC ignored its obligations while Foss complied. (Docket No. 64 at 3, n.1.)

Foss and the KYTC are at odds regarding comparative negligence because they differ as to the predicate question of whether they are *in pari delicto*. However, the Court agrees with the KYTC that the resolution of this question remains premature at this early stage of the proceedings. The factual record

---

[1] The doctrine of *in pari delicto*, a common law defense, stands for the principle that "a plaintiff who has participated in wrongdoing may not recover damages resulting for the wrongdoing." Black's Law Dictionary (7th ed. 1999).

has not been sufficiently developed to allow the Court to conclude as a matter of law that either party's position applies categorically, as demonstrated by the factual disputes articulated in the briefs. Accordingly, the Court will defer any elaboration upon its earlier ruling at this time.

## II.     The right to a credit for damages paid

Foss next claims that it is entitled to assert recoupment and setoff as affirmative defenses. (Docket No. 60-1 at 8.)  The KYTC does not oppose this argument.  (Docket No. 63-1 at 5-6.)  Foss initially asserted a counterclaim for "setoff against damages" awarded to the KYTC.  In its opposition to the KYTC's motion to dismiss, Foss clarified that it sought "setoff and recoupment" against such damages.  Although Foss admits that it did not indicate "recoupment" in the counterclaim, it nonetheless intended to include both "setoff and recoupment" in its claim for "setoff for damages."  (Docket No. 60-1 at 8.)  On November 19, 2013, the Court granted Foss's motion for leave to amend its answer.  (Docket No. 69.)  The following day, Foss submitted its amended answer, specifically asserting both setoff and recoupment as affirmative defenses.  (Docket No. 70.)  Accordingly, Foss's request is moot in light of the Court's subsequent docket entries.

## III.     Governmental immunity

Finally, Foss asks the Court to reconsider its ruling that the KYTC's operation of the Bridge was a governmental function subject to immunity.  According to Foss, the Court failed to address its argument that the KYTC was engaged in maintaining a permitted obstruction to navigation, an activity that Foss characterizes as "overwhelmingly private."  (Docket No. 60-1 at 21.)  Foss distinguishes the governmental functions of operating a highway, maintaining a bridge used to transport vehicles, and adhering to safety standards from obstructing "the paramount right of navigation."  (Docket No. 60-1 at 21.)  Foss analogizes the Bridge to "private railroad bridges, docks, or aerial pipeline crossings, all of which are privately owned."  Foss notes that such structures require permitting from either the United States Coast Guard or the Corps of Engineers.  The entities that own them, generally private, must either

comply with the permit's terms or be deemed unreasonable hazards to navigation. Therefore, Foss reasons, the KYTC's maintenance of a permitted obstruction to navigation is proprietary in nature. (Docket No. 64 at 6.)

The Court cannot agree with Foss's analysis. As noted in the previous Memorandum Opinion, the Court's inquiry focuses upon whether the state performed a governmental function or a proprietary function in operating the Bridge. "The test for making this determination is as follows: Is the Board carrying out a function integral to state government, or is it engaged in a business of a sort theretofore engaged in by private persons or corporations for profit?" *Brabson v. Floyd Cnty. Bd. of Educ.*, 796 F. Supp. 2d 862, 864 (E.D. Ky. 2011) (citations omitted) (quoting *Ky. Ctr. for the Arts Corp. v. Berns*, 801 S.W.2d 327, 332 (Ky. 1990) and *Yanero v. Davis*, 65 S.W.3d 510, 520 (Ky. 2001)) (internal quotation marks omitted). The Court emphasized Kentucky's longstanding judicial history of deeming the operation of bridges a governmental activity. *See, e.g.*, *Boomer v. Glenn*, 21 F. Supp. 766, 767 (W.D. Ky. 1938) ("The construction and maintenance of highways and bridges as a governmental function is one of the most ancient known to the law."). More generally, the provision of a "transportation infrastructure" is a "function integral to state government" and "a quintessential state concern and function." *Comair, Inc. v. Lexington-Fayette Urban County Airport Corp.*, 295 S.W.3d 91, 101-02 (Ky. 2009).

By contrast, Foss points to no case law distinguishing between governmental and proprietary activities based on their treatment by permitting agencies. Moreover, while the state-owned Bridge may be similar to a privately owned structure in that either may obstruct navigation, this commonality alone does not define the scope of the KYTC's immunity. The fact that the Bridge obstructed the waterway below it does not alter the essential nature of the KYTC's undertaking in maintaining it. The Court having found that Foss's renewed argument of this claim is not decisive, the Court must deny Foss's motion in this regard.

**CONCLUSION AND ORDER**

The Court has considered both the motion of the Limitation Plaintiffs to alter, amend, or vacate its earlier Memorandum Opinion and Order, and the response of the Claimant, the Commonwealth of Kentucky Transportation Cabinet.  Having weighed each party's arguments, and being otherwise sufficiently advised, IT IS HEREBY ORDERED that the Limitation Plaintiffs' motion to alter, amend, or vacate is DENIED in all aspects.