UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00021-GNS-LNK

In the Matter of the Complaint of FOSS
MARITIME COMPANY, as Owner and
FOSS ATLANTIC, INC., as Operator and
Owner, *pro hac vice*, of the M/V DELTA
MARINER, Official No. 1094576, for
Exoneration from or Limitation of Liability

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion to Amend the Third-Party Complaint filed by Foss Maritime Company and Foss Atlantic, Inc. (collectively "Foss") (DN 108). The motion is fully brief is now ripe for adjudication. For the reasons set forth below, the motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit concerns two allisions involving the Eggners Ferry Bridge ("the Bridge"), owned by the Kentucky Transportation Cabinet ("KTC") and situated in the Kentucky Lake portion of the Tennessee River. The first occurred on November 15, 2011, as the *M/V Miss Katie*, owned and operated by Marquette Transportation Company, LLC ("Marquette"), traveled northbound on the Tennessee River. While attempting to negotiate Span E of the Bridge, the *Miss Katie* struck the center portion of the span.[1] Marquette alleges that the Bridge's navigation lights failed to comply with the U.S. Coast Guard permit and with federal law, as only Span E was illuminated as required. In a December 15, 2011, letter addressed to Thomas Hines

---

[1] This allision is the subject of *Allianz Global Risks US Insurance Co. v. Marquette Transportation Co., LLC*, Civil Action No. 5:12-CV-00168-GNS-LKK, which is also pending before this Court.

("Hines")—the supervisor of permits and traffic for District One of the KTC—the U.S. Coast Guard advised the KTC of "multiple reports from commercial mariners that the [Bridge's] navigation lights are not operating properly or the lights are extinguished," creating an "unacceptable navigational hazard to river traffic." (Pet'trs' Mot. for Summ. J. Ex. A, DN 100-2). The letter requested Hines' "urgent attention" in bringing the Bridge's lights into compliance. (Pet'trs' Mot. for Summ. J. Ex. A). Enclosed were copies of the permit and the revised lighting diagram. (Pet'trs' Mot. for Summ. J. Exs. A-1 to A-2, DN 100-3 to 100-4). James LeFevre—the chief district engineer and Hines' supervisor—initially received the letter, then called Hines to his office to review it. Hines, however, thought that the navigation lights were operating properly and understood the letter to indicate that he "needed to get red reflective panels ordered to get the bridge up to its current lighting plan." (Pet'trs' Mot. for Summ. J. Ex. G at 5-6, DN 100-10).

Seventy-two days after the first allision, Foss's vessel, the *M/V Delta Mariner*, sustained a similar accident. Foss alleges that only Span E's navigational lights were illuminated on the night of January 26, 2012. When the *Delta Mariner* attempted to pass under the Bridge through Span E, its mast struck the Bridge's span, which collapsed onto the vessel's bow and into the riverbed. Foss alleges that the lack of functional navigation lights on the Bridge proximately caused the allision.

Foss instituted this limitation action seeking exoneration from, or limitation of, liability. (Compl., DN 1). Several parties filed claims related to the allision, including residents who allege losses related to interruption of their usual travel routines, restaurant owners who allege the loss of travel-related business, and a telecommunications company that had a fiber optic

cable severed by the accident.  Additionally, as the owner of the Bridge, KTC filed a claim for the cost and expense of replacing the demolished span.

At the time it answered KTC's claim, Foss simultaneously filed a counterclaim against KTC and a third-party complaint against Defendants Hines and LaFevre.  (Pet'rs' Countercl. & Third-Party Compl., DN 22).   The Third-party Defendants also filed a complaint against Marquette, alleging that the *Miss Katie*'s allision damaged the bridge's lights and electrical system, thus causing the *Delta Mariner*'s allision.

In the initial scheduling order entered by the Court on January 19, 2013, the parties had until November 1, 2013, to amend the pleadings.  (Scheduling Order, DN 24).   More than 14 months after the deadline to amend the pleadings had passed, Foss filed the present motion seeking to amend its claims against LeFevre and Hines.  (Pet'rs' Mot. to Amend Third-Party Compl., DN 108).

## II.      JURISDICTION

This Court has jurisdiction of this matter because it arises under admiralty law.  *See* 28 U.S.C. § 1333.

## III.      STANDARD OF REVIEW

"[W]here a party seeks to amend its pleadings after a deadline set by court order, the party is effectively asking the court both to amend the scheduling order and for leave to amend its pleadings, and the party must show good cause in order to procure the court's consent." *Hildebrand v. Dentsply Intern., Inc.*, 264 F.R.D. 192, 198 (E.D. Pa. 2010) (citing Fed. R. Civ. P. 16(b)(4)).  Because the Court had previously entered a scheduling order pursuant to Fed. R. Civ. P. 16 dictating the deadlines for amending the pleadings, "that rule's standards control."  *Id.*

(citing Fed. R. Civ. P. 16(e)).  Under Fed. R. Civ. P. 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

## IV.   **DISCUSSION**

In seeking leave to amend the Third-Party Complaint, Foss asserts that Fed. R. Civ. P. 15(a) governs this type of motion and that leave should be freely given to amend.  (Pet'rs' Mem. in Supp. of Mot. to Amend Third-Party Compl., 8-9, DN 108-1; Pet'rs' Reply to Mot. to Amend Third-Party Compl., 2, DN 114).  As outlined above, however, this rule does not apply once this Court entered its scheduling order.  *See also Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995) ("[W]hile the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted under Rule 15(a), it does not fulfill the 'good cause' requirement of Rule 16(b)."  (quoting *Amcast Indus. Corp. v. Detrex Corp.*, 132 F.R.D. 213, 218 (N.D. Ind. 1990))).

From the Court's review of Foss's motion, however, Foss has failed to satisfy the initial threshold requirement of proving good cause.[2]  As one court has explained:

> "A court's evaluation of good cause is not co-extensive with an inquiry into the propriety of the amendment under . . . . Rule 15."  The "good cause" standard primarily considers the diligence of the party seeking the amendment.  In other words, in order to demonstrate "good cause" a party must show that despite their diligence the time table could not have reasonably been met.

*Tschantz*, 160 F.R.D. at 571 (citations omitted).  Despite being alerted by LeFevre and Hines in their response that Fed R. Civ. P. 16 governed Foss's motion, Foss did not address the applicability of this rule in its reply.  Because Foss failed to articulate how it exercised due

---

[2] While Foss repeatedly argued that there was a lack of prejudice to prevent the amendment, the issue of prejudice is only a consideration once the moving party satisfies the good cause requirement of Fed. R. Civ. P. 16.  *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."  (citation omitted)).

diligence to obtain the information giving rise to the additional claims it seeks to assert in Foss's Proposed Amended Third-Party Complaint, Foss has failed to meet its burden under Fed. R. Civ. P. 16 to show good cause why its motion to amend was not filed until over fourteen months after the deadline for amended pleadings had passed. *See Wilson v. Wal-Mart Stores East, LP*, No. 4:11-CV-00148, 2013 WL 2607113, at *4 (W.D. Ky. June 11, 2013) ("The Court finds that Wal-Mart has not sufficiently shown good cause so as to permit the amendment of the Scheduling Order. Wal-Mart has offered no evidence demonstrating its diligence in attempting to meet the case management order's requirements. It only explains why Gossett will not suffer any prejudice without explaining why it was not able to meet the requirements."); *Hans v. Matrixx Initiatives, Inc.*, No. 3:04-CV-540, 2007 WL 2668594, at *3 (W.D. Ky. Sept. 6, 2007) ("The Plaintiffs seek to append a claim to the Complaint which would require entirely new defenses. The Plaintiffs show no good cause why this claim could not have been voiced earlier."). Accordingly, the Court will deny Foss's motion.

## V.   CONCLUSION

For these reasons, IT IS HEREBY ORDERED that Foss Maritime Company and Foss Atlantic, Inc.'s Motion to Amend the Third-Party Complaint (DN 108) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
July 9, 2015

cc:   counsel of record
Margaret Maddox, *pro se*
Bryan Wagner, *pro se*
Bertha & Kelly Wilson, *pro se*
Kevin Cunningham, *pro se*